THOMAS, Appellant,

v.

GENERAL ELECTRIC COMPANY et al., Appellees.*

[Cite as *Thomas v. Gen. Elec. Co.* (1999), 131 Ohio App.3d 825.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–970981.

Decided Feb. 5, 1999.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1999), 86 Ohio St.3d 1442, 713 N.E.2d 1052.

*Ivan Tamarkin,* for appellant.

*Dinsmore & Shohl, Charles M. Roesch* and *Cheryl E. Bruner*; *General Electric Legal Operations* and *Nancy Dirkse DeWitt,* for appellees.

MARIANNA BROWN BETTMAN, Judge.

## PROCEDURAL POSTURE

Plaintiff-appellant William Thomas works for defendant-appellee General Electric as an electrician. Defendant-appellee Charles Vanover is his supervisor. Thomas is a member of Lodge 912, International Association of Machinists and Aerospace Workers ("the Union"). There is a collective-bargaining agreement ("CBA") between the Union and GE. The CBA provides for a grievance procedure that culminates in binding arbitration. Matters of discipline are also covered by the Code of Conduct implemented under the Management Rights Provision of the CBA.

Article XXII sets forth the grievance procedure for all matters subject to collective bargaining between the parties.

Article XXIII of the CBA covers arbitration. According to this provision, a grievance that remains unresolved shall be submitted to arbitration if it involves, *inter alia,* the subject of disciplinary penalties, including warning, suspension, and discharge, or a claimed violation of any of the following pertinent provisions: discrimination, hours of work and overtime, including violations of the provisions on shift transfers, and reporting.

As to the provision on discrimination, Article XXIII provides that "grievances which claim that a disciplinary action, discharge, upgrading action or transfer action violates paragraph (3) of Article IX will be subject to arbitration as a matter of right."

Paragraph (3) of Article IX reads as follows:

"Neither the Company nor the Union shall discriminate in the application of the provisions of the Agreement against any employee because of race, color, religion, age, national origin or ancestry, sex, or marital status."

■ Thomas, who is African–American, claims that his supervisor, Vanover, and GE discriminated against him because of his race and retaliated against him because he complained about the discrimination. Instead of pursuing arbitration, Thomas filed suit against Vanover and GE (collectively, "GE"), alleging racial discrimination and retaliation in violation of federal and state civil-rights laws.[1] Specifically, Thomas alleged in his complaint that GE discriminated against him because of his race in the following respects:

1. Threatening him with discipline while Caucasian employees were not threatened for the same type of conduct.

2. Refusing to grant him a third-shift hardship transfer.

3. Refusing to allow him to check out at a closer station to his home.

4. Suspending him for a period of time for a violation when a Caucasian employee who also committed the violation was not suspended.

5. Issuing him a work-practices memo accusing him of flagrant abuse of company time when Caucasian employees in similar situations (missing work in an emergency situation) were not issued a memo.

6. Denying him a second-shift transfer under a hardship case while four named Caucasian employees were allowed to transfer shifts.

7. Delaying his request for leave under the Family & Medical Leave Act and requiring him to provide medical information in support of his request that Caucasian employees were not required to provide.

---

1. Under Ohio law, a supervisor/manager may be held jointly and/or severally liable with his employer for his discriminatory conduct in violation of R.C. Chapter 4112. *Genaro v. Cent. Transport, Inc.* (1999), 84 Ohio St.3d 293, 703 N.E.2d 782.

In a status conference, GE argued to the trial court that Thomas's claims were preempted by Section 301 of the Labor Management Relations Act ("LMRA"), Section 185, Title 29, U.S.Code because they involved interpretation of the CBA, and that his claims were barred because he failed to exhaust the grievance and arbitration provisions of the CBA. The parties agreed to submit these issues to the court to decide. GE filed a motion for summary judgment, which Thomas opposed. The trial court granted summary judgment to GE on the grounds that Thomas's claims involved interpretation of the CBA and were thus preempted under Section 301 of the LMRA. The court held that jurisdiction of such matters lies exclusively with the federal courts and dismissed the complaint. Thomas has appealed from this judgment.[2]

## SUBJECT OF REVIEW IN THIS APPEAL

■ Although Thomas has raised only an issue, rather than the required assignment of error, see App.R. 16(A)(3), based on that issue, we interpret his assignment of error as being that the trial court erred in granting summary judgment to GE. Thomas argues that the trial court erred in ruling that his claims were preempted under Section 301 of the LMRA and in holding that the court had no jurisdiction to hear his claims. GE argues that the trial court's decision should be upheld, either because Thomas's claims were preempted under Section 301,[3] or because Thomas must proceed to arbitration under the CBA. We see the issue in this case as whether the claims raised by Thomas must be submitted to the grievance and arbitration procedures in the CBA, or whether they can be determined in a judicial forum. If the former, the trial court lacks subject-matter jurisdiction to hear the claims; if the latter, it does not.[4]

## THE ARBITRABILITY ISSUE

The cases that we find dispositive of what has become a very complex legal question are the United States Supreme Court's decision in *Alexander v. Gard-*

---

2. We have *sua sponte* removed this case from the accelerated calendar.

3. For a discussion concurrent jurisdiction in state and federal courts for Section 301 claims, see *Charles Dowd Box Co. v. Courtney* (1962), 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483; *Stevens v. Ravenna Aluminum Industries* (1996), 114 Ohio App.3d 472, 683 N.E.2d 403; *Rutledge v. Dayton Malleable, Inc.* (1984), 20 Ohio App.3d 229, 20 OBR 290, 485 N.E.2d 757; *Raceway Park, Inc. v. Ansted* (Dec. 11, 1998), Lucas App. No. L-98-1140, unreported, 1998 WL 852575.

4. The trial court determined that it had no jurisdiction to hear the claims because they were preempted. It then entered summary judgment for GE. If there is no subject-matter jurisdiction, dismissal is the proper remedy, not summary judgment.

*ner–Denver Co.,*[5] this court's decision in *Truax v. EM Industries, Inc.,*[6] and the Sixth Circuit Court of Appeals' decision in *Penny v. United Parcel Serv.*[7] We will also briefly discuss *Wright v. Universal Maritime Serv. Corp.,*[8] decided by the Supreme Court after the instant case was submitted to us for decision.[9]

In *Truax* and *Penny*, this court and the Sixth Circuit Court of Appeals both carefully reviewed the two lines of cases dealing with arbitration versus judicial determination of employee claims based on violations of state and federal statutes. One line of cases follows *Alexander v. Gardner–Denver Co., supra;* the other follows *Gilmer v. Interstate/Johnson Lane Corp.*[10]

In *Gardner–Denver,* the United States Supreme Court expressly held that an arbitration provision does not divest the federal courts of jurisdiction over actions brought by employees under Title VII of the Civil Rights Act of 1964. While acknowledging federal policy favoring arbitration, the court concluded that this policy and the federal policy against discrimination in employment practices "can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-arbitration clause of a collective-bargaining agreement and his cause of action under Title VII."[11]

In *Gilmer,* the Supreme Court held that claims under the federal civil rights statutes can be made the exclusive subject of arbitration agreements under the Federal Arbitration Act, Section 1 *et seq.,* Title 9, U.S.Code, precluding judicial resolution of the claims. Accord *Willis v. Dean Witter Reynolds, Inc.*[12]

*Wright* recognized, but did not resolve, the "tension" between these lines of cases, holding instead that the waiver involved in the particular collective-bargaining agreement was not clear, and, therefore, that arbitration was not required.

---

5. (1974), 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147.

6. (1995), 107 Ohio App.3d 210, 668 N.E.2d 524.

7. (C.A.6, 1997), 128 F.3d 408.

8. (1998), 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361.

9. We commend counsel for bringing the fact that this case was pending to our attention at oral argument, and for filing the decision in this court when it was issued.

10. (1991), 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26.

11. *Gardner–Denver,* 415 U.S. at 59–60, 94 S.Ct. at 1025, 39 L.Ed.2d at 165.

12. (C.A.6, 1991), 948 F.2d 305.

In *Truax*, this court articulated the significant difference between *Gardner–Denver* and *Gilmer*, and we find that distinction dispositive in the case before us. In *Gardner–Denver*, the union was attempting to waive the individual rights of one of its members, while in *Gilmer*, an individual waived his own right to a judicial forum when he personally signed an arbitration agreement. These cases can be reconciled by holding that the latter is permissible, while the former is not. We explained the reason for this in *Truax*, and we explain it by again quoting from *Gardner–Denver:* [13]

"It is true, of course, that a union may waive certain statutory rights related to collective activity, such as the right to strike. These rights are conferred on employees collectively to foster the processes of bargaining and properly may be exercised or relinquished by the union as collective-bargaining agent to obtain economic benefits for union members. Title VII, on the other hand, stands on plainly different ground; it concerns not majoritarian processes, but an individual's right to equal employment opportunities. Title VII's strictures are absolute and represent a congressional command that each employee be free from discriminatory practices. Of necessity, the rights conferred can form no part of the collective-bargaining process since waiver of these rights would defeat the paramount congressional purpose behind Title VII. In these circumstances, an employee's rights under Title VII are not susceptible of prospective waiver." (Citations omitted.)

This court continues to follow, as it did in *Truax*, the line of cases headed by *Gardner–Denver*,[14] and extends this holding to civil rights claims brought pursuant to R.C. Chapter 4112. We see strong policy reasons in favor of this holding. Labor arbitrators are authorized under a collective bargaining agreement to resolve contractual claims, not statutory claims. Labor arbitrators have developed a body of expertise in labor law. This is why the law presumes the arbitrability of disputes based upon a collective bargaining agreement. *Wright, supra.*[15] This is *not*, however, the same body of expertise or the same body of law implicated by the civil-rights statutes. Nor are the remedies the same. This court also believes that the rationale of *Gardner–Denver* was expressly approved by the Ohio Supreme Court in *Youghiogheny & Ohio Coal Co. v. Oszust.*[16]

---

**13.** *Gardner–Denver* at 51, 94 S.Ct. at 1021, 39 L.Ed.2d at 159–160.

**14.** For an excellent analysis of the case law in this area, see *O'Hara v. Mt. Vernon Bd. of Edn.* (S.D.Ohio 1998), 16 F.Supp.2d 868, which takes the same position as this court on this issue.

**15.** 525 U.S. at ——, 119 S.Ct. at 395, 142 L.Ed.2d at 369–370.

**16.** (1986), 23 Ohio St.3d 39, 23 OBR 57, 491 N.E.2d 298 (see, especially, concurring opinion of Wright, J.).

Following *Gardner–Denver* and *Truax,* we hold that a union cannot prospectively waive the individual right of a member to select a judicial forum for the resolution of the member's federal and state statutory claims. In this case, that means Thomas can proceed with his civil rights and retaliation claims in state court. He may also pursue these claims in arbitration if he wishes. We recognize that extrajudicial resolution of labor disputes is also a public policy strongly to be encouraged.[17] We see some benefit in pursuing this matter in arbitration, because the matter may be resolved to Thomas's satisfaction. However, we hold that Thomas is not required to proceed to arbitration first, or even at all; neither exhaustion nor election of remedies is an issue here.

The trial court's entry of summary judgment for GE is reversed, and this matter is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

HILDEBRANDT, P.J., and GORMAN, J., concur.

---

17. *United Steelworkers of Am. v. Am. Mfg. Co.* (1960), 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.* (1960), 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.* (1960), 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.