JOURNAL ENTRY AND OPINION.
{¶ 1} Plaintiff-appellant, Darla K. Minnick, appeals the judgment of the Cuyahoga County Court of Common Pleas denying her motion to reactivate her case. For the reasons that follow, we reverse and remand.
 {¶ 2} Minnick is the only female police officer to be employed by the City of Middleburg Heights Police Department. In March 2000, Minnick filed suit against defendants-appellees: the City of Middleburg Heights, the Middleburg Heights Police Department (the "Department"), Police Chief John Maddox and Lieutenant Ken Smith. Minnick's complaint alleged that on January 28, 1999, male officers of the City's Police Department played a pornographic movie on Department premises during duty hours. Minnick alleged that she complained about the movie and other "sexual and/or sexist conduct and commentary" to her superiors, but they did nothing to prevent or correct the alleged gender-based hostility.
 {¶ 3} Minnick's complaint alleged further that approximately one month after the pornographic video incident, she and another patrol officer were dispatched to respond to a burglar alarm call at the B B Appliance Store. A short time thereafter, in April 1999, the Department, without any explanation, stripped Minnick of her seniority-based "Officer in Charge" status and reduced her pay. One week later, Minnick received a "Notice of Proposed Disciplinary Action," informing her that she would be suspended for 180 days, without pay, for her neglect of duty and incompetency regarding the B B Appliance Store break-in, falsification of cruiser mileage records, low performance evaluations over a five-year period, and misrepresentation regarding the Department's response to a proposed uniform change.
 {¶ 4} In June 1999, Minnick filed a gender discrimination charge with the Ohio Civil Rights Commission and Equal Employment Opportunity Commission ("EEOC") regarding her suspension. Minnick subsequently filed another discrimination charge with the Civil Rights Commission and EEOC, alleging that the Department had retaliated against her when she returned to work in October 1999, after serving her suspension, by assigning her to a field training program subject to periodic performance evaluations and questioning her three times about the pornographic video incident. The EEOC subsequently dismissed the charges and issued "right to sue" letters regarding each charge.
 {¶ 5} Minnick filed suit in March 2000, alleging that the discipline imposed by defendants-appellees "constituted disparate treatment on the basis of gender and/or in retaliation for [her] good faith opposition to gender hostility in the workplace" and further, that upon her return from her suspension, she was "subjected to different terms and conditions of employment in retaliation for [her] protected activities." Minnick alleged that appellees' conduct violated the Ohio Civil Rights Act, R.C. Chapter 4112, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1983, and Ohio's public policy against workplace discrimination.
 {¶ 6} Prior to filing suit, Minnick had filed a grievance regarding her suspension pursuant to a collective bargaining agreement ("CBA" or "Agreement") between the Ohio Patrolmen's Benevolent Association (the "Union"), of which Minnick is a member, and the City of Middleburg Heights. The grievance was denied at each step of the grievance process, although arbitration had not yet been completed when Minnick filed suit. Accordingly, upon appellees' motion, the trial court "stayed" the case pending the outcome of arbitration. In September 2001, the arbitrator rendered his decision, denying Minnick's grievance. Minnick subsequently filed a motion with the trial court to reactivate her case, which the trial court denied. Timely appealing the denial of her motion to reactivate, Minnick raises one assignment of error for our review.
 {¶ 7} As an initial matter, we must consider whether we have jurisdiction over Minnick's appeal. Appellees contend that the trial court's order denying Minnick's motion to reactivate is not a final appealable order and, therefore, we have no jurisdiction to consider Minnick's appeal.
 {¶ 8} Article IV, Section 3(B)(2) of the Ohio Constitution limits this court's appellate jurisdiction to the review of final orders. Absent a final order, this court is without jurisdiction to affirm, reverse or modify an order from which an appeal is taken. General Acc. Ins. Co. v.Ins. Co. of North America (1989), 44 Ohio St.3d 17, 20. R.C. 2505.02, as relevant to this case, defines a final order as "an order that affects a substantial right in an action that in effect determines the action and prevents a judgment." R.C. 2505.02(B)(1).
 {¶ 9} Appellees contend that the order denying Minnick's motion to reactivate her case means only that the trial court refused to move the case from its inactive docket to its active docket. Appellees contend that the trial court could, at some unspecified time and under unspecified circumstances, reinstate the case and then proceed to adjudication. Therefore, appellees assert, the order denying Minnick's motion to reactivate the case did not determine any issues or prevent a judgment and, thus, is not a final appealable order.
 {¶ 10} The problem with appellees' argument is their assumption that when the trial court "stayed" the case pending arbitration of Minnick's grievance, it placed the case on its "inactive" docket.[1]
Although the trial court's order stated that the case was "stayed" pending arbitration and the "case shall be reactivated only upon motion," thereby implying that the case was merely "inactive," our review of the docket and the trial court's handwritten journal entry staying the case indicates that the trial court actually dismissed the case entirely from its docket.
 {¶ 11} Therefore, the trial court's order denying Minnick's motion to reactivate the case precluded the possibility of any further proceedings, thereby denying Minnick the opportunity to litigate the issues still remaining in her case and, in effect, deciding those issues in favor of appellees. In short, the trial court's order denying Minnick's motion both determined the action and prevented a judgment and, therefore, is a final appealable order. R.C. 2505.02(B)(1).
 {¶ 12} Appellees also contend that this court lacks subject matter jurisdiction to consider Minnick's appeal because Minnick did not timely appeal the referral of the matter to arbitration, thereby waiving any arguments regarding the referability of the case to arbitration. This argument is not persuasive. Contrary to appellees' argument, Minnick's arguments are not "primarily directed to whether or not her claims were referable to arbitration in the first instance." Rather, Minnick is arguing that she should have been given an opportunity to litigate the claims still remaining after arbitration and the trial court's order denying her motion to reactivate the case denied her that opportunity. The record reflects that her appeal from that order was timely. Accordingly, because Minnick timely appealed from a final appealable order, we have jurisdiction to consider the merits of her appeal.
 {¶ 13} In her single assignment of error, Minnick argues that the trial court erred in denying her motion to reactivate her case because the arbitrator's opinion did not address all of the issues raised in her complaint. Specifically, Minnick contends that the arbitrator's opinion denying her grievance decided only the issue raised in her grievance, defined by the arbitrator as "whether the City had just cause to discipline [Minnick]" under the terms of the CBA. Minnick contends that the arbitration opinion did not address the allegations of her complaint that she was discriminated and retaliated against, in violation of state and federal law, by the application of disparate performance standards and duty assignments because of her gender and her complaints about gender-based hostility in the workplace. In short, Minnick contends that arbitration of her grievance under the terms of the collective bargaining agreement does not preclude her statutory claims. We find this assignment of error to be well taken.
 {¶ 14} On several occasions, the United States Supreme Court has considered and rejected the contention that an award in an arbitration proceeding brought pursuant to a collective bargaining agreement precludes a subsequent suit. Alexander v. Gardner-Denver Co. (1974), 415 U.S. 36, was an action under Title VII of the Civil Rights Act of 1964 brought by an employee who had unsuccessfully claimed in an arbitration proceeding that his discharge was racially motivated. Although the employee protested the same discharge in the Title VII action, the Supreme Court held that his Title VII claim was not foreclosed by the arbitral decision against him. The Court reasoned:
 {¶ 15} "In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement; in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in the respectively appropriate forums." Id. at 49-50.
 {¶ 16} Similarly, in Barrentine v. Arkansas-Best Freight System,Inc. (1981), 450 U.S. 728, Barrentine and a fellow employee had unsuccessfully submitted wage claims to arbitration. Nevertheless, the Supreme Court rejected the contention that the arbitration award precluded a subsequent suit based on the same underlying facts alleging a violation of the minimum wage provisions of the Fair Labor Standards Act. Id. at 745-746.
 {¶ 17} In McDonald v. City of West Branch, Michigan (1984),466 U.S. 284, the Supreme Court explained its holdings in Gardner-Denver
and Barrentine:
 {¶ 18} "Our rejection of a rule of preclusion in Barrentine and our rejection of a rule of deferral in Gardner-Denver were based in large part on our conclusion that Congress intended the statutes at issue in those cases to be judicially enforceable and that arbitration could not provide an adequate substitute for judicial proceedings in adjudicating those claims under those statutes."
 {¶ 19} The Court noted further in McDonald that its decisions inBarrentine and Gardner-Denver "compel the conclusion that [arbitration] cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that Section 1983 is designed to safeguard. As a result, according preclusive effect to an arbitration award in a subsequent Section 1983 action would undermine that statute's efficacy in protecting federal rights."
 {¶ 20} In McDonald, the petitioner, who had been discharged from the City of West Branch police force, filed a grievance pursuant to the collective bargaining agreement between the city and the police union. The grievance proceeded to arbitration and the arbitrator, finding just cause for the petitioner's discharge, ruled against the petitioner. Alleging that he had been discharged for exercising his First Amendment rights, the petitioner then filed an action against the city, the police chief and other defendants under Section 1983, Title 42 of the U.S. Code. The jury returned a verdict against the police chief. The Sixth Circuit reversed the judgment against the police chief and held that the petitioner's First Amendment claims were barred by res judicata and collateral estoppel. The Supreme Court reversed, however, finding the doctrines of res judicata and collateral estoppel inapplicable in light of its decisions in Gardner-Denver and Barrentine.
 {¶ 21} Similarly, in Youghiogheny Ohio Coal Co. v. Oszust
(1986), 23 Ohio St.3d 39, the Ohio Supreme Court held that a private arbitrator's determination that an employee was discharged for just cause pursuant to the applicable collective bargaining agreement did not preclude the employee's filing of a claim for unemployment compensation and the subsequent determination by the Ohio Bureau of Employment Services that the employee was not discharged for just cause in connection with his work within the meaning of R.C. 4141.29. The Supreme Court noted that, as in Gardner-Denver, Barrentine and McDonald, Oszust was "asserting a statutory right independent of the arbitration process," Id. at 41, and, therefore, the arbitrator's determination did not foreclose the possibility that he could nonetheless be eligible for unemployment compensation benefits.
 {¶ 22} Gardner-Denver and its progeny, including Oszust, dictate a reversal in this case. The issue presented by Minnick's grievance — whether the City had just cause to discipline her — is a contract-based claim. Minnick's statutory claims are distinct from any right conferred by the collective bargaining agreement, however, and, therefore, are independent of the arbitration process.
 {¶ 23} We recognize that statutory claims can be made the exclusive subject of arbitration agreements where an individual waives his or her right to a judicial forum and agrees to arbitrate such statutory claims. See Gilmer v. Interstate/Johnson Lane Corp. (1991),500 U.S. 20. Furthermore, once "having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Id. Any agreement in a collective bargaining agreement to arbitrate a statutory claim, however, must be "clear and unmistakable."Wright v. Universal Maritime Svc. Corp. (1998), 525 U.S. 70, 82. Absent a clear waiver, it is not appropriate to find an agreement to arbitrate. Id.
 {¶ 24} It is apparent there is no explicit waiver of Minnick's statutory claims in the CBA at issue. Appellees contend, however, that in reaching his decision that Minnick was fired for just cause under the collective bargaining agreement, the arbitrator decided the factualissues underlying Minnick's statutory claims against her. According to appellees, this court is required to give preclusive effect to the arbitrator's decision and therefore find that Minnick's claims are foreclosed by the doctrine of collateral estoppel.
 {¶ 25} Appellees raise the same argument that was recently considered and rejected by the Seventh Appellate District Court in Felgerv. Tubetech, Columbiana App. No. 2000 CO 23, 2002-Ohio-1161. In Felger, an employee injured on the job filed a workers' compensation claim. After she was discharged from her employment, the employee filed a grievance alleging her discharge was due to a pattern of company-sanctioned discrimination and harassment arising from her workers' compensation claim and union activities. Denying the employee's grievance, the arbitrator specifically found that she was not fired discriminatorily or in retaliation for protected activities.
 {¶ 26} The employee subsequently filed a state law complaint asserting various discrimination and retaliation claims. The trial court granted the employer summary judgment regarding the employee's retaliation claim that she was discharged for filing and prosecuting her workers' compensation claim because, the court held, the employee's claim was barred by the doctrine of collateral estoppel. The court reasoned that "the plaintiff raised those issues in the arbitration and therefore asked for them to be decided by the arbitrator." Id. The Seventh Appellate District Court reversed. The Seventh District noted that inGardner-Denver, the statutory claim of racial discrimination and the contractual claim of discharge without just cause involved the same issue, i.e., the reason for the employee's discharge, but the United States Supreme Court nevertheless found that the employee's contractual right to arbitration and statutory claim "have legally independent origins and are equally available to the aggrieved employee." The court observed:
 {¶ 27} "`An arbitrator is confined to interpretation of and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. * * * If an arbitral decision is based `solely upon the arbitrator's view of the requirements of enacted legislation,' rather than on an interpretation of the collective bargaining agreement, the arbitrator has authority to resolve only questions of contractual rights * * *.'" Id., quotingGardner-Denver, 415 U.S. at 54.
 {¶ 28} The Seventh District noted that there are strong policy reasons for this distinction:
 {¶ 29} "`Labor arbitrators are authorized under a collective bargaining agreement to resolve contractual claims, not statutory claims. Labor arbitrators have developed a body of expertise in labor law. This is why law presumes the arbitrability of disputes based upon a collective bargaining agreement. This is not, however, the same body of expertise or the same body of law implicated by the civil rights statutes. Nor are the remedies the same.'" Id., quoting Thomas v. Gen.Elec. Co. (1999), 131 Ohio App.3d 825, 830.
 {¶ 30} Accordingly, the court held that the employee's claims were not barred by the doctrine of collateral estoppel:
 {¶ 31} "The United States Supreme Court and the Ohio Supreme Court have unequivocally held the duty of an arbitrator is limited to assessing contractual rights under a collective bargaining agreement. Thus, the determination as to whether or not Ms. Felger was retaliated against for filing a workers' compensation claim would be outside the scope of the arbitrator's duties." Id.
 {¶ 32} Likewise, here, although the arbitrator's determination of the issues relevant to whether the City had just cause to discipline Minnick under the collective bargaining agreement may involve the same issues as Minnick's statutory discrimination and retaliation claims, any determination regarding whether Minnick was discriminated against in violation of state or federal law would be outside the scope of the arbitrator's duties. Accordingly, Minnick's statutory claims are not barred by the doctrine of collateral estoppel.
 {¶ 33} Appellant's assignment of error is therefore sustained. The order of the trial court denying Minnick's motion to reactivate her case is reversed and the matter is remanded for further proceedings according to law and consistent with this opinion.
ANNE L. KILBANE, P.J. AND DIANE KARPINSKI, J. CONCUR.
[1] Minnick likewise erroneously interprets the order as staying the case and moving it to the trial court's "inactive" docket.