**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2754
_____

BRADLEY G. DARRINGTON; VAL DARRINGTON

v.

MILTON HERSHEY SCHOOL,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 5-18-cv-04265)
District Judge: Honorable Gerald J. Pappert
_____

Argued: April 1, 2020

Before: GREENAWAY, JR., PORTER, and MATEY,
*Circuit Judges*.

(Filed: May 6, 2020)
_____

Casey A. Coyle
Michael D. Jones **[Argued]**
Rachel E. King
ECKERT SEAMANS CHERIN & MELLOTT
50 South 16th Street
Two Liberty Place, 22nd Floor
Philadelphia, PA 19102

Mark A. Fontana
ECKERT SEAMANS CHERIN & MELLOTT
213 Market Street, 8th Floor
Harrisburg, PA 17101

*Counsel for Appellant Milton Hershey School*

Katherine C. Oeltjen **[Argued]**
Fernando I. Rivera
CONSOLE MATTIACCI LAW
1525 Locust Street
9th Floor
Philadelphia, PA 19102

*Counsel for Appellees Bradley G. Darrington and Val Darrington*

———————

OPINION OF THE COURT

———————


PORTER, *Circuit Judge*.

Bradley and Val Darrington sued the Milton Hershey School ("MHS"), their former employer, in the District Court for employment discrimination and retaliation. MHS moved to compel arbitration under the collective bargaining agreement ("CBA") it entered into with the Darringtons' Union. The District Court denied the motion. Because the CBA clearly and unmistakably waives a judicial forum for the Darringtons' statutory discrimination claims, we will reverse.

**I**

MHS is a free, private, non-denominational school that houses and teaches students from diverse social and economic backgrounds. MHS hired the Darringtons to work as full-time houseparents in one of its student homes. While working at MHS, the Darringtons were members of the Bakery, Confectionary, Tobacco Workers & Grain Millers International Local Union 464 ("Union").

## A

The Union is "the exclusive collective bargaining representative for all full-time houseparents . . . employed by [MHS] . . . regarding wages, hours[,] and other terms and conditions of employment." App. 81. Thus, when the Union entered into the CBA with MHS, the CBA bound its members, including the Darringtons.

Section 9.1 of the CBA details the grievances governed by the CBA's arbitration procedure. The CBA's arbitration provision covers "any dispute arising out of [its] terms and conditions," including the "discipline or discharge" of Union members. App. 92. A grievance includes "any dispute alleging discrimination against any [Union members] based upon membership in any protected categories under federal or state law and/or as set forth in Section 10.1 of [the CBA]." *Id.* Section 10.1 contains the CBA's non-discrimination provision, which states that "[t]he Union and [MHS] will not discriminate against employees or applicants on the basis of race, color, religion, age (40 and above), sex, national origin, disability status, and membership or non-membership in the Union." *Id.* at 96.

MHS and the Union agreed "that the Union, on behalf of itself and the allegedly aggrieved [Union members], waives, releases[,] and discharges any right to institute or maintain any private lawsuit alleging employment discrimination in any state or federal court regarding the matters encompassed within this grievance procedure." *Id.* at 93. The CBA "sets forth the exclusive procedure for resolution of disputes arising out of the terms and conditions of [the CBA] or the discipline or discharge of" a Union member. *Id.*

In short, if aggrieved Union members are unsatisfied with the resolution of their disputes after discussions with MHS officials, "the Union [may seek] further consideration of the grievance" by submitting the grievance to arbitration on their behalf. *Id.* at 94.

## B

In their role as houseparents, the Darringtons attended and participated in religious programming offered by MHS.

3

Throughout their employment, the Darringtons voiced their concern to MHS administrators that some of the programming was discriminatory and offensive. Believing that a chapel service and sermon constituted "child abuse," Bradley Darrington filed a report with the local state agency for children and youth services. App. 24. The Department dismissed the report the next day

Bradley then filed a charge of discrimination with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission alleging that MHS's mandatory religious programming discriminated against him based on his religion. Less than two months after Bradley filed the charges, MHS fired the Darringtons. The Darringtons then filed two more charges of discrimination with the EEOC and the PHRC.

After receiving right-to-sue letters from the EEOC on all three charges, the Darringtons filed a complaint in the District Court alleging discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, and the Pennsylvania Human Relations Act, 43 Pa. Stat. §§ 951–63. MHS moved to compel arbitration under the CBA. The District Court denied the motion because it found that the CBA "does not clearly and unmistakably waive [the Darringtons'] right to bring their statutory discrimination [(including retaliation)] claims in federal court." App. 10–11. MHS timely appealed.

## II

The District Court had subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have appellate jurisdiction over orders denying a motion to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 16(a)(1)(A)–(B). *See Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 176 (3d Cir. 1999). We review de novo the arbitrability of the Darringtons' claims. *Jones v. Does 1–10*, 857 F.3d 508, 511 n.2 (3d Cir. 2017) (citation omitted).

## III

A collective bargaining agreement can waive a judicial forum for union members' statutory claims only if the waiver is clear and unmistakable. *See Wright v. Universal Mar. Serv.*

4

*Corp.*, 525 U.S. 70, 79–82 (1998). The Supreme Court and this Court have not defined the contours of the clear-and-unmistakable-waiver standard. Using ordinary tools of contract interpretation, we find that the CBA clearly and unmistakably waived the Darringtons' right to a judicial forum for their statutory claims.

## A

We must answer "the question of whether the parties agreed to arbitrate." *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). And when deciding whether to compel arbitration, we must consider the enforceability and the scope of the contract's arbitration provision. *See In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 519 (3d Cir. 2019) (citation omitted).[1]

Thus, we ask "whether the merits-based dispute in question falls within the scope of that valid agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 527 (3d Cir. 2009) (citation omitted). The parties dispute only whether the Darringtons' merits-based disputes—their statutory discrimination claims—"fall[ ] within the scope of" the CBA's arbitration provision. *See id.*[2]

---

[1] Neither party disputes the enforceability of the CBA's arbitration provision, so we need not address it. *See Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 159 n.15 (3d Cir. 1999). In any event, "so long as the collective bargaining agreement explicitly states that an employee must resolve his statutory as well as his contractual rights through the grievance procedure," the arbitration provision is enforceable. *See Vega v. New Forest Home Cemetery, LLC*, 856 F.3d 1130, 1134 (7th Cir. 2017) (citing *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 258–59, 274 (2009)).

[2] Because the Federal Arbitration Act established "a liberal federal policy favoring arbitration agreements," *Epic System Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (citation omitted), we generally apply a "presumption of arbitrability" when reviewing arbitration provisions. *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 78 (1998) (citations omitted). The presumption of arbitrability is not relevant here, however,

**1**

A federal-statutory-discrimination dispute falls within the scope of a collective bargaining agreement's arbitration provision "when (1) the arbitration provision clearly and unmistakably waives the employee's ability to vindicate his or her federal statutory right in court; and (2) the federal statute does not exclude arbitration as an appropriate forum." *Jones*, 857 F.3d at 512 (citing *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 260 (2009)). Title VII claims are arbitrable. *Seus v. John Nuveen & Co.*, 146 F.3d 175, 182 (3d Cir. 1998) (collecting cases); *see also 14 Penn Plaza*, 556 U.S. at 256 n.5 (suggesting that Title VII claims are arbitrable).

**2**

When considering the Darringtons' state-law PHRA claims, we need not consider whether the PHRA excludes arbitration as an appropriate forum. That is so because the FAA preempts "any state rule" that facially or covertly prohibits arbitration. *See Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011)); *see also Concepcion*, 563 U.S. at 343 (noting that although the FAA "preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives").[3]

We have not decided whether the clear-and-unmistakable-waiver standard applies to the arbitrability of state law claims—such as those brought under the PHRA. *See, e.g.*, *Maldonado v. SecTek, Inc.*, No. 19-693, 2019 WL 3759451, at *6 (E.D. Pa. Aug. 8, 2019). The Supreme Court

---

because it does not apply to waiver of a judicial forum for statutory claims. *See id.*

[3] Regardless, under Pennsylvania law, if a valid arbitration agreement exists and a dispute falls within the agreement's scope, then the dispute must be arbitrated. *See Messa v. State Farm Ins. Co.*, 641 A.2d 1167, 1168 (Pa. 1994); *see also* 42 Pa. Cons. Stat. § 7304. The Darringtons do not contend that the arbitration agreement is invalid. So their PHRA claims are arbitrable if they fall within the CBA's scope.

has said that the FAA preempts state laws that stand "as an obstacle to the accomplishment and execution of the full purposes and objectives" of the FAA. *Concepcion*, 563 U.S. at 352. So if a state law for the waiver of a judicial forum provides a more onerous standard than the clear-and-unmistakable-waiver standard, then it is preempted by the FAA.

To answer the question of whether the FAA preempts Pennsylvania law regarding the standard for assessing the waiver of a judicial forum for state statutory rights, we first look to Pennsylvania court decisions in that realm. Based on this Court's review, however, Pennsylvania has not explained what standard governs the waiver of a judicial forum for state statutory claims in a CBA.

Because of the Supreme Court's FAA preemption decisions, we know that Pennsylvania could adopt the clear-and-unmistakable-waiver standard, the most exacting standard possible. As we explain below, even under this standard, the Darringtons waived a judicial forum for their state claims under the PHRA.

The Supreme Court's discussion in *Wright* supports this conclusion. *Wright* articulated the clear-and-unmistakable-waiver standard while talking about "statutory claims" generally and not just *federal* statutory rights. *See generally Wright*, 525 U.S. at 79–81. We see no reason to review the waiver of a judicial forum for state statutory claims under a standard different from that for the waiver of a judicial forum for federal statutory claims.

## B

We turn to the primary question: whether the CBA clearly and unmistakably waives the Darringtons' right to vindicate their statutory antidiscrimination rights in court.[4]

The clear-and-unmistakable-waiver standard ensures that "very general" arbitration clauses cannot waive a judicial forum for vindication of statutory rights. *See Wright*, 525 U.S. at 80. Rather, a clear and unmistakable waiver of a judicial forum for "statutory antidiscrimination claims [must] be 'explicitly stated' in the collective bargaining agreement." *14 Penn Plaza*, 556 U.S. at 258 (quoting *Wright*, 525 U.S. at 80).

In *Wright*, the Court concluded that a collective bargaining agreement that required arbitration of "matters under dispute" did not clearly and unmistakably waive a judicial forum for a union member's claims under the Americans with Disabilities Act. 525 U.S. at 80. Three reasons animated the Court's decision. First, the "very general" phrase "matters under dispute" could be interpreted to refer only to contractual matters. *Id.* at 80. Second, the rest of the collective bargaining agreement did not explicitly incorporate statutory antidiscrimination requirements. *Id.* Third, the collective bargaining agreement did not require compliance with the ADA. *Id.* at 81.[5]

---

[4] The parties assume that Pennsylvania contract-interpretation principles govern the CBA, and we agree. *See, e.g.*, *In re Remicade*, 938 F.3d at 523 n.5 (interpreting a collective bargaining agreement under New Jersey law because the parties assumed New Jersey law applied). Pennsylvania's contract-interpretation rules require us to provide the contract's "clear and unambiguous" words with their "commonly accepted and plain meaning." *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 647 (Pa. 2009) (citations omitted).

[5] In a recent case, *14 Penn Plaza*, the Supreme Court did not address whether the arbitration provision—requiring that "[a]ll [discrimination claims under federal or state law] shall be subject to the grievance and arbitration procedure"—was a clear and unmistakable waiver. 556 U.S. at 252.

Some of our sister circuits have developed bright-line approaches for identifying clear and unmistakable waivers. One approach finds a clear and unmistakable waiver when a collective bargaining agreement "explicitly mentions employee rights under [the relevant statute] or any other federal anti-discrimination statute[.]" *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 9 (1st Cir. 1999); *see also Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 7 n.7 (1st Cir. 2012) (explaining that the clear-and-unmistakable-waiver standard required "something closer to specific enumeration of the statutory claims to be arbitrated").[6]

Another approach finds a clear and unmistakable waiver when (1) an arbitration provision requires employees "to submit to arbitration all federal causes of action arising out of their employment," *Carson v. Giant Food, Inc.*, 175 F.3d 325, 331 (4th Cir. 1999), or (2) a general arbitration clause "referring to 'all disputes'" is accompanied by "an 'explicit incorporation of statutory antidiscrimination requirements' elsewhere in the contract," *id.* at 332 (quoting *Wright*, 525 U.S.

---

[6] The Sixth and Seventh Circuits also endorse this approach. *See, e.g.*, *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 631 (6th Cir. 1999) (explaining that "a statute must specifically be mentioned in a [collective bargaining agreement] for it to even approach" the clear-and-unmistakable-waiver standard); *Vega*, 856 F.3d at 1135 (holding that a collective bargaining agreement did not clearly and unmistakably waive a judicial forum for rights under the Fair Labor Standards Act when neither the arbitration provision nor the collective bargaining agreement referenced the FLSA).

at 80); *see also Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 216 (4th Cir. 2007) (citations omitted).[7]

In our view, *Wright* requires nothing more than it says. The clear-and-unmistakable-waiver standard is satisfied if a collective bargaining agreement, interpreted according to applicable contract-interpretation principles, clearly and unmistakably waives a judicial forum for statutory claims. An arbitration provision's waiver of a judicial forum for statutory claims must merely be "particularly clear" and "explicitly stated." *Wright*, 525 U.S. at 79–80 (citation omitted).

The bright-line approaches fashioned by our sister circuits may create clear expectations for bargaining parties and may prompt precise contract drafting. Indeed, it may be helpful for a court's analysis if bargaining parties specifically list the statutes for which they intend to waive a judicial forum. But that approach may also invite drafting mistakes and cause unintended gaps as the statutory landscape changes. The standard enunciated in *Wright* does not require magic words or prescribe any bright-line approach requiring enumeration of statutes, so we decline to adopt one.

Our approach finds support in our recent decision in *Jones v. Does 1–10*. In *Jones*, the collective bargaining agreement "explicitly provide[d] that '[a]ll claims that an employee has been discriminated against . . . in violation of applicable federal, state or local law shall be subject to the grievance and arbitration procedure as the sole and exclusive remedy for violations.'" 857 F.3d at 513 n.17. The collective

---

[7] The Second, Fifth, and Eighth Circuits also embrace this approach. *See, e.g.*, *Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 84 (2d Cir. 2016); *Ibarra v. UPS*, 695 F.3d 354, 360 (5th Cir. 2012); *cf. Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 223–24 (2d Cir. 2019) (finding a clear and unmistakable waiver when the collective bargaining agreement required arbitration of claims under specifically listed statutes); *Thompson v. Air Transp. Int'l Ltd. Liab. Co.*, 664 F.3d 723, 726 (8th Cir. 2011) (accepting, without comment, the plaintiff's concession that the arbitration provision covering employment discrimination "alleged to be violations of state or federal law" was a clear and unmistakable waiver).

bargaining agreement did not have a "similar provision for [Fair Labor Standards Act] disputes." *Id.* We therefore agreed with the parties' concession that the collective bargaining agreement lacked "a clear and unmistakable waiver of the employees' right to vindicate their FLSA claims in federal court." *Id.* at 513. *Jones* thus implied that the collective bargaining agreement clearly and unmistakably waived a judicial forum for statutory claims of discrimination even though it did not individually enumerate specific statutes.

Here, "the Union, on behalf of itself and the allegedly aggrieved [Union members], waive[d] . . . *any right* to institute or maintain *any* private lawsuit alleging employment discrimination in *any state or federal court* regarding the matters encompassed within this grievance procedure." App. 93 (emphasis added). The grievance procedure encompassed "*any dispute* alleging discrimination" by MHS against Union members "based upon membership in *any* protected categories under federal or state law and/or as set forth in Section 10.1 of [the CBA]." *Id.* at 92 (emphasis added).

The CBA's arbitration provision is broad, but it is also clear and unmistakable. The plain and ordinary meaning of "any" in the context of affirmative sentences like the ones in the CBA is "every" or "all." *See* Bryan Garner, *Any*, Garner's Modern English Usage 57 (4th ed. 2015); *see also Any*, Oxford English Dictionary https://www.oed.com/view/Entry/8973 (last visited May 4, 2020) (noting that the use of any "in affirmative contexts" is "used to refer to a member of a particular group or class without distinction or limitation (hence implying every member of the class or group, since every one may in turn be taken as a representative)");[8] *see, e.g.*, *Massachusetts v. E.P.A.*, 549 U.S. 497, 528–29 (2007) (describing the Clean Air Act's "sweeping definition" that repeatedly used "any").

By its plain terms, the CBA's arbitration provision waived the Darringtons' right to sue in state or federal court for

---

[8] When interpreting contracts under Pennsylvania law, courts "may look to dictionary definitions to" determine the plain meaning of a contract. *Commonwealth ex rel. Shapiro v. UPMC*, 208 A.3d 898, 906 (Pa. 2019).

11

disputes alleging discrimination based on membership in categories protected by federal law, state law, or Section 10.1 of the CBA.[9] The arbitration provision's reference to "any dispute alleging discrimination . . . based upon membership in any protected categories under federal or state law" clearly and unmistakably includes within its scope the Darringtons' claims under Title VII and the PHRA. App. 92. That is all the clear-and-unmistakable-waiver standard requires.

\* \* \*

Because the CBA clearly and unmistakably waives a judicial forum for the Darringtons' statutory discrimination claims, we will reverse the District Court's order denying MHS's motion to compel arbitration and order the District Court to enter an order consistent with this opinion.

---

[9] The Darringtons argue that the CBA "does not reference retaliation or claims for retaliation for engaging in protected activity." Appellee's Br. at 7; *see also id.* at 17. The argument is unavailing. "Retaliation is . . . a form of 'discrimination' because the complainant is subjected to differential treatment." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173–74 (2005). Any argument that retaliation was not clearly within the scope of the term "discrimination" here is belied by the fact that the Darringtons' EEOC filings indicated that "retaliation" was the "cause of discrimination" that motivated their filing. App. 208–14. The CBA's arbitration provision covering disputes alleging "discrimination" thus necessarily includes their claims alleging retaliation.