[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Sinley v. Safety Controls Technology, Inc.*, Slip Opinion No. 2022-Ohio-4153.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4153

SINLEY, APPELLEE, *v.* SAFETY CONTROLS TECHNOLOGY, INC., ET AL.;

SUPERIOR DAIRY, INC., APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Sinley v. Safety Controls Technology, Inc.*, Slip Opinion No. 2022-Ohio-4153.]

Contracts—Collective-bargaining agreements—Arbitration—R.C. 2745.01—Intentional torts—To compel arbitration against a union employee, the claim at issue must have been clearly and unmistakably waived in the arbitration provisions in the collective-bargaining agreement governing the parties—To be clear and unmistakable, the claim must be included either by statute or specific cause of action in the arbitration provision of the collective-bargaining agreement—Court of appeals' judgment affirmed.

(No. 2020-1158—Submitted September 7, 2021—Decided November 23, 2022.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 109065, 2020-Ohio-4068.

_____

**BRUNNER, J.**

{¶ 1} When an employee is a member of a labor union, he yields some individual rights for benefits he realizes through a collective-bargaining process and its resulting agreement or contract. The individual unionized employee is governed by the terms of his union's collective-bargaining agreement, including any terms that require arbitration as the exclusive remedy to resolve a dispute. But this does not change the traditional analysis of whether an issue is arbitrable—the breach or controversy must have been contemplated by the collective-bargaining agreement. So when a dispute arises from outside the terms of the agreement—i.e., not simply a breach of the agreement itself but a dispute arising from common-law or statutory authority separate from the agreement—the dispute must be within the scope of the issues the parties to the collective-bargaining agreement contemplated for arbitration in order to otherwise preclude a judicial forum.

{¶ 2} Specifically, the issues that the parties to a collectively bargained agreement intend to be resolved by arbitration must be precise, clear, and unmistakable in the language of the agreement. Because appellee Steven Sinley's claims against his employer in this case were not clearly contained within the terms of the arbitration clause in his union's bargaining agreement with his employer, we hold that he cannot be compelled into arbitration to resolve his claims.

## I. Facts and Procedural History

{¶ 3} Sinley worked in the maintenance department at a dairy-food production facility operated by appellant, Superior Dairy, Inc. ("Superior"), in Stark County. Sinley alleges that on May 11, 2019, he responded to a call to repair a malfunctioning grinder machine. He alleges that while working on the machine, he suffered a severe injury to his dominant right hand resulting in the loss of four fingers.

{¶ 4} In August 2019, Sinley sued his employer, along with Safety Controls Technology, Inc., which is alleged to be Superior's safety consulting and training

firm; Rotogran International, Inc., the alleged manufacturer of the grinder machine; and the Ohio Bureau of Workers' Compensation. Sinley claimed that Superior had removed the electronic safety mechanism on the grinder that would have shut off the power to the grinder whenever it was disassembled. Sinley alleged that he was not warned by his supervisor that certain safety procedures had not been implemented on the machine, and he alleged that his supervisor "intentionally and without warning activated the machine" while Sinley was working on it. Sinley sought damages for his mental and physical pain and suffering, permanent injuries, loss of enjoyment of life, and medical expenses and sought statutory damages available related to products liability.

{¶ 5} Superior states that maintenance employees at its facility, including Sinley, are members of a labor union, the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 92 (the "union"). Superior and the union were parties to a collective-bargaining agreement ("CBA") at the time of Sinley's injury. Articles IX and X of the CBA contain provisions governing grievances and arbitration, respectively. Article IX, Section 1 defines "grievance" as "any employment-related controversy or dispute arising between the parties to [the] Agreement, or between an employee and the parties to [the] agreement as to the interpretation or application of the terms and provisions of [the] Agreement, or as to the violation of any employment-related laws or statutes (except workers' compensation matters)."

{¶ 6} Article X, Section 1 prescribes that "[s]hould any grievance, controversy or dispute remain unsettled after exhausting the [grievance] procedure set forth in Article IX, either party [to the agreement], of [sic] any employee within the confines and procedures stated below, shall, if the party or employee desires, demand arbitration within thirty (30) days after failing to settle the grievance."

{¶ 7} In Article X, Section 3, the parties "further agreed that the grievance procedure set forth in Article IX and the arbitration procedure set forth in Article X

shall be, and the same hereby is, the sole and exclusive method of settling disputes, differences or controversies arising between the parties [to the agreement] or between an employee and the parties [to the agreement]." And Article X, Section 4 states:

> The above procedures set forth in Articles IX and X shall apply equally to any alleged violation of laws or statutes by the Union or the Company, as alleged by an employee, including without limitation; Title VII of the 1964 Civil Rights Act; the federal Age Discrimination in Employment Act; the Consolidated Omnibus Budget Reconciliation Act; the Employee Retirement Income Security Act; the Equal Pay Act; the Fair Labor Standards Act; the Family and Medical Leave Act; the Americans with Disabilities Act Amendments Act; the Immigration Act of 1990; the Fair Credit Reporting Act; the Labor-Management Relations Act; the Lilly Ledbetter Fair Pay Act; the Occupational Safety and Health Act (but only as to the anti-relations [sic] aspects of OSHA); alleged breaches of a Union's duty to fairly represent its employees; alleged breaches of Ohio public policy; Ohio Revised Code Chapter 4112; Ohio Revised Code Section 4112.90 (workers' compensation retaliation); Ohio Revised Code Section 4101.17; Ohio Revised Code Section 4113.52; Ohio's overtime and/or minimum wage statute; and the Genetic Information Non-Discrimination Act of 2008.

{¶ 8} Before answering Sinley's complaint, Superior attempted to avail itself of these provisions of the CBA and filed a motion to stay the court proceedings and to compel arbitration. Sinley filed a brief in opposition and argued that the arbitration provisions in the CBA did not "clearly and unmistakably"

include an agreement to arbitrate his claims against Superior, namely intentional employer torts falling under R.C. 2745.01. After extensive briefing by the parties, the trial court summarily denied the motion to stay the proceedings and to compel arbitration.

{¶ 9} Superior initiated a timely appeal of the trial court's decision to the Eighth District Court of Appeals. There, Superior argued that the trial court erred in failing to compel arbitration of Sinley's claims under the Ohio and Federal Arbitration Acts, R.C. Chapter 2711 and 9 U.S.C. 1 et seq. Superior explained that after an expensive lawsuit in 2014 by an employee alleging disability discrimination, Superior and the union renegotiated the CBA and agreed to expand the arbitration provisions so that future disputes alleging a violation of employment-related laws or statutes would be exclusively resolved through the grievance and arbitration procedures set forth in the CBA. Superior cited the language in Article X, Section 4 that required arbitration for "any alleged violation of laws or statutes" and claimed that Sinley's intentional tort claims were included.[1]

{¶ 10} Sinley argued that an intentional tort committed by an employer is inherently outside the scope of the employment relationship and therefore cannot be an employment-related controversy covered by the CBA. He also argued that because the CBA was silent as to claims involving R.C. 2745.01 or any intentional torts or any reference to the same, the CBA did not contain a "clear and unmistakable" requirement to resolve such claims through arbitration.

{¶ 11} The Eighth District held that the Ohio and Federal Arbitration Acts both require a trial court to stay proceedings and compel arbitration when the issue before the court may be referred to arbitration according to a written agreement and, further, that a party cannot be compelled to arbitrate an issue that it did not

---

1. Superior also argued that it was denied due process when the trial court denied the motion for stay and to compel arbitration without stating its reasons or rationale; the court of appeals overruled this assignment of error, and it is not at issue here.

agree to submit to arbitration. 2020-Ohio-4068, ¶ 15. Following *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998), in which the United States Supreme Court held that a collective-bargaining agreement must contain a "clear and unmistakable" waiver to bar a union member's statutory claim against an employer in a judicial forum, the appellate court looked to the language in the CBA.

**{¶ 12}** Because the CBA made no mention of R.C. 2745.01 or intentional torts, the Eighth District concluded that Sinley had not waived his right to pursue such a claim in a judicial forum. 2020-Ohio-4068 at ¶ 22. The Eighth District dismissed Superior's argument that the language in Article X, Section 4 implies that the list of laws and statutes is not exhaustive and should include Sinley's claim. The appellate court determined that that language does not meet the "bright-line rule" requiring the waiver to be express, clear, and unmistakable. *Id*. at ¶ 23.

**{¶ 13}** Because the Eighth District found this to be dispositive of the appeal, it did not consider the parties' remaining assignments of error or arguments and affirmed the trial court's decision. Superior instituted a discretionary appeal of that decision here, and we accepted the matter on the following propositions of law:

> The presumption of arbitrability applies in R.C. 2711.03 and 9 U.S.C. § 3 motions to compel arbitral resolution of statutory claims. Arbitration should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.
>
> A "clear and unmistakable" waiver of a judicial forum for resolving employee statutory claims can exist in a private or public-sector collective bargaining agreement without exhaustively listing every conceivable, possible state and federal statute. A collectively-bargained waiver of a judicial forum for employee statutory claims

> is to be treated and viewed no differently than the complete waiver
> of the statutory right or claim itself.

*See* 160 Ohio St.3d 1495, 2020-Ohio-5634, 159 N.E.3d 278. For the reasons that follow, we affirm.

## II. Analysis

### A. The Ohio and Federal Arbitration Acts

{¶ 14} The Ohio Arbitration Act ("OAA") provides for the general enforceability of written agreements to arbitrate, providing that "[a] provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract * * * shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." R.C. 2711.01(A). Similarly, the Federal Arbitration Act ("FAA") provides that "[a] written provision in any * * * contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. 2. This court has acknowledged that these statutes express strong public policy in favor of arbitration agreements. *See Taylor v. Ernst & Young, L.L.P.*, 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203, ¶ 18.

{¶ 15} However, the extent of that favor can be limited, as the statutes recognize, by the written agreement of the parties. Therefore, when deciding whether arbitration may be compelled by one of the parties to an agreement, courts must look to "whether the parties actually agreed to arbitrate the issue, * * * not the general policies of the arbitration statutes." *Id.* at ¶ 20, citing *Equal Emp. Opportunity Comm. v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002).

7

{¶ 16} Courts have taken great care in determining whether to uphold a presumption of arbitration, especially when it is argued that an individual employee's right to a judicial forum has been waived through a collective-bargaining agreement. *See, e.g.*, *Wright*, 525 U.S. at 78-80, 119 S.Ct. 391, 142 L.Ed.2d 361. Collective-bargaining agreements are negotiated by unions on behalf of a group of employees, and as a result, some employee rights may be diluted in order to achieve a greater collective bargain. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (noting that certain statutory rights related to collective activity, such as the right to strike, "are conferred on employees collectively to foster the processes of bargaining and properly may be exercised or relinquished by the union as collective-bargaining agent to obtain economic benefits for union members"); *14 Penn Plaza L.L.C. v. Pyett*, 556 U.S. 247, 257, 129 S.Ct. 1456, 173 L.E.2d 398 (2009) ("a union may agree to the inclusion of an arbitration provision in a collective-bargaining agreement in return for other concessions from the employer. Courts generally may not interfere in this bargained-for exchange"). But individual rights, created by statute and not through the collective-bargaining process, cannot be set aside by a collective-bargaining agreement. *See id.* (Title VII action cannot be waived by collective-bargaining agreement because "it concerns not majoritarian processes, but an individual's right to equal employment opportunities" and "the rights conferred [by Title VII] can form no part of the collective-bargaining process since waiver of these rights would defeat the paramount congressional purpose behind Title VII"). A union's waiver of a collective right (e.g., the right to strike) on behalf of represented employees differs from an individual employee's waiver of his own rights. *See Wright* at 80. Accordingly, arbitration clauses negotiated in a collective-bargaining agreement, which affect an employee's individual right to bring a claim against his employer, must be "particularly clear." *Wright* at 79.

8

{¶ 17} To that end, the United States Supreme Court has specifically rejected the presumption of arbitrability when analyzing an agreement to waive a judicial forum reached through collective bargaining. *See id.* Other courts have followed in finding that " 'workers' statutory claims * * * are "not subject to a presumption of arbitrability." ' " *Kovac v. Superior Dairy, Inc.*, 930 F.Supp.2d 857, 866 (N.D.Ohio 2013), quoting *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 631 (6th Cir.1999), quoting *Wright* at 79. Because the FAA and the OAA are nearly identical, we agree that while arbitration is generally favored in most contracts, there is no presumption of arbitrability of an individual employee's claims under an arbitration clause contained in a collective-bargaining agreement. In reaching this conclusion, we must reject Superior's first proposition of law.

### B. The "Clear and Unmistakable" Standard

{¶ 18} Sinley's claim is a common-law intentional-tort claim limited by Ohio law. *See* R.C. 2745.01. The claim is arbitrable insofar as nothing in R.C. 2745.01 itself precludes arbitration. *See generally 14 Penn Plaza* at 258 (holding that nothing in the statute giving rise to the employee's claim precluded arbitration). We must therefore determine whether the "claim falls within the scope of [the] arbitration provision," i.e., Article X of the CBA. *See Taylor*, 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203, at ¶ 21. To be considered to be within the scope of the arbitration provision, the waiver of a judicial forum must be "clear and unmistakable." *Wright* at 80-81.

{¶ 19} This "clear and unmistakable" standard arose in the federal courts from cases in which employees sought a judicial forum to resolve alleged violations of rights created through acts of Congress. *See Wright*, 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361 (involving employment discrimination under the Americans with Disabilities Act); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (involving a claim under the Age Discrimination in Employment Act); *Alexander*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147

(involving a violation of Title VII of the Civil Rights Act). Federal and state courts thereafter have followed the United States Supreme Court's rule that arbitration of a claim that arises from statute or common law—i.e., something other than a breach of the collective-bargaining agreement itself—can be compelled only if the collective-bargaining agreement contains a clear and unmistakable waiver of the right to a judicial forum. The list of cases that have restated the standard set forth in *Wright* is extensive and includes nearly all the United States Circuit Courts and many state appellate courts. *See, e.g.*, *Cavallaro v. UMass Mem. Healthcare, Inc.*, 678 F.3d 1, 7 (1st Cir.2012); *Lawrence v. Sol G. Atlas Realty Co., Inc.*, 841 F.3d 81, 83-85 (2d Cir.2016); *Darrington v. Milton Hershey School*, 958 F.3d 188, 193-96 (3d Cir.2020); *Carson v. Giant Food, Inc.*, 175 F.3d 325, 331-332 (4th Cir.1999); *Vega v. New Forest Home Cemetery, L.L.C.*, 856 F.3d 1130, 1134 (7th Cir.2017); *Wawock v. CSI Elec. Contrs., Inc.*, 649 Fed.Appx. 556, 558-559 (9th Cir.2016); *Mathews v. Denver Newspaper Agency, L.L.P.*, 10th Cir. No. 09-1233, 2011 WL 2040396, *5 (May 17, 2011); *Morales v. Chem. Lime Co.*, N.D.Ala. No. 2:10-CV-3618-VEH, 2011 WL 12637372, *4 (Feb. 22, 2011); *Curtis v. United States*, 59 Fed.Cl. 543, 549 (2004).

{¶ 20} In Ohio, the "clear and unmistakable" standard has been recognized by several appellate districts as well as the federal courts. *See, e.g.*, *Muldowney v. Portage Cty. Bd. of Commrs.*, 2018-Ohio-2579, 115 N.E.3d 676, ¶ 27 (11th Dist.); *Cox v. Dayton Pub. Schools Bd. of Edn.*, 2d Dist. Montgomery No. 27613, 2018-Ohio-2656, ¶ 42-43; *Minnick v. Middleburg Hts.*, 8th Dist. Cuyahoga No. 81728, 2003-Ohio-5068, ¶ 23; *Bratten*, 185 F.3d at 631; *Kovac*, 930 F.Supp.2d at 866-867. In particular, the Sixth Circuit has adopted a "bright line" test to determine whether a waiver is clear and unmistakable under *Wright*, requiring that a cause of action arising from a statute "specifically be mentioned in" a collective-bargaining agreement. *Bratten* at 631.

10

**{¶ 21}** The dissenting opinion attempts to weaken this standard by arguing that the Sixth Circuit recently found that a judicial forum for a claim of racial discrimination was clearly and unmistakably waived through an arbitration provision that did not cite to any specific statute or law. Dissenting opinion, ¶ 43. But as the Sixth Circuit explained, a citation to a specific statute is not required so long as there is an explicit reference to the statutory claim. *Nealy v. Shelly & Sands, Inc.*, 852 Fed.Appx. 879, 882-883 (6th Cir.2021). In *Nealy*, the Sixth Circuit found that the arbitration provision "*explicitly refers* to 'claims regarding equal employment opportunity * * * under any federal, state or local fair employment practices.' " (Ellipsis sic and emphasis added.) *Nealy* at 883.

**{¶ 22}** Superior appears to be familiar with this "not easily met" standard. *See Kovac* at 866. In *Kovac*, an employee sued Superior for alleged disability discrimination under Ohio and federal laws. The matter was removed to the United States District Court for the Northern District of Ohio, where Superior argued that the collective-bargaining agreement at issue contained a clear and unmistakable waiver of Kovac's right to a judicial forum. *Id.* at 865-867. Superior also argued that the state-law discrimination claim required a different analysis because the standard in *Wright* was applicable only to federal claims. *Id.* at 867. But the Northern District disagreed, explaining that "[i]n reality, the analysis under Ohio law is exactly the same, because Ohio courts have explicitly adopted *Wright*'s 'clear and unmistakable' standard." *Id.*

**{¶ 23}** To avoid confusion, we formally adopt the premise in *Wright* and hold that a waiver of a judicial forum to resolve state-law claims arising outside a collective-bargaining agreement must be clear and unmistakable. The Eighth District applied this standard, and we find no reason to veer from this straightforward and accepted approach. We turn, then, to how this this standard applies in this case.

*C. Arbitrability of Sinley's Intentional-Tort Claim*

**{¶ 24}** As discussed above, Sinley's intentional-tort claim is arbitrable. We must therefore determine whether Sinley can be compelled to arbitrate his claim by applying the "clear and unmistakable" standard we now adopt.

**{¶ 25}** The Eighth District found that the CBA "makes no mention of R.C. 2745.01 specifically, or even intentional torts generally." 2020-Ohio-4068 at ¶ 21. The Eighth District applied the *Bratten* bright-line test and found that the "generalized language" in the CBA could not be read as a waiver of Sinley's right to a judicial forum. *Id*. at ¶ 22. Even acknowledging the CBA's nonexhaustive list of laws and statutes subject to arbitration, the Eighth District concluded that the language of the CBA was "insufficient to demonstrate a clear and unmistakable waiver" without specifically mentioning the relevant statute, as required by *Bratten*. 2020-Ohio-4068 at ¶ 23.

**{¶ 26}** Superior, citing *Abdullayeva v. Attending Homecare Servs., L.L.C.*, 928 F.3d 218 (2d Cir.2019), urges us to adopt and apply a more lenient approach to the "clear and unmistakable" test and look at whether the CBA covers "statutory causes of action generally," *id.* at 224. But in *Abdullayeva*—and in other cases cited by Superior—the union member was compelled into arbitration because her claims fell under statutes that were specifically listed in the collective-bargaining agreement. *Id.* at 224-225; *see also, e.g.*, *Wilson v. PBM, L.L.C.*, 193 A.D.3d 22, 32, 140 N.Y.S.3d 276 (2021) (finding that the collective-bargaining agreement at issue "explicitly reference[d] the employment discrimination statutes that the plaintiff ha[d] alleged were violated"). *Abdullayeva* and several other cases relied on by Superior require a *specific reference* to a statute or statutory cause of action. Therefore, *Abdullayeva* is not helpful to Superior and does not require us to find that the language in the CBA meets the "clear and unmistakable" test.

**{¶ 27}** Superior also argues that the Eighth District ignored principles of contract interpretation when it found that the nonexhaustive list of statutes in

Article X, Section 4 of the CBA did not include Sinley's intentional-tort claim. However, if the parties intended for the nonexhaustive list to be taken to include all statutory causes of actions generally, then the provision becomes just that, a general clause requiring arbitration of all possible violations of laws or statutes. Such broad provisions do not meet the test whether examined under a bright-line or more lenient approach. *See Kovak*, 930 F.Supp.2d at 867 ("It is exactly this sort of general arbitration provision, without any reference to specific antidiscrimination statutes, that the Court in *Wright* found failed to constitute a waiver"); *compare Darrington*, 958 F.3d at 195 (quoting the collective-bargaining agreement at issue in that case and finding a union's waiver of " '*any right* to institute or maintain *any* private lawsuit alleging employment discrimination in *any state or federal court* regarding the matters encompassed within [the] grievance procedure' " to be broad but also clear and unmistakable [emphasis added in *Darrington*]). The CBA in this instance is silent as to intentional torts by the employer, and we cannot infer that the parties intended to include such claims in a general "without limitation" clause.

{¶ 28} We do not find that an arbitration provision in a collective-bargaining agreement must cover every possible, conceivable federal and state law claim in order for the language to constitute a clear and unmistakable waiver. But the body of case law presented by the parties and amici curiae on both sides demonstrates that some specific reference to the claim at issue is required. And while expressly including the specific statute when a right or claim is created by one leaves no question as to whether the parties intended to waive such a claim, doing so may not always be practical or necessary. But for a waiver to be clear and unmistakable, it must identify the claim either by statute or cause of action. Having no reference whatsoever to intentional-tort claims, the CBA here cannot be used to compel Sinley to arbitrate such claims.

### III. Conclusion

{¶ 29} We hold that in order to compel arbitration against a union employee, the claim at issue must have been clearly and unmistakably waived in the arbitration provisions in the collective-bargaining agreement governing the parties. To be clear and unmistakable, the claim must be included either by statute or specific cause of action in the arbitration provision of the CBA. Because Sinley's claim against Superior for an intentional tort was not mentioned in the CBA, the union and Superior did not clearly and unmistakably agree to prohibit resolution of the claim in court.

{¶ 30} For these reasons, the judgment of the court of appeals is affirmed.

Judgment affirmed.

O'CONNOR, C.J., and DONNELLY and STEWART, JJ., concur.

KENNEDY, J., dissents, with an opinion joined by FISCHER and DEWINE, JJ.

_____

**KENNEDY, J., dissenting.**

{¶ 31} Because the collective-bargaining agreement at issue in this case clearly and unmistakably requires the submission of all employment-related causes of action to arbitration, the Eighth District Court of Appeals erred in concluding that appellee Steven Sinley's employer-intentional-tort claim is not arbitrable. I therefore would reverse its judgment and remand this matter to the trial court to grant the motion to compel arbitration. Because the majority does not, I dissent.

### Facts and Procedural History

{¶ 32} According to the complaint filed in this case, on May 11, 2019, Sinley attempted to repair a malfunctioning grinder machine. His employer, appellant, Superior Dairy, Inc., had allegedly removed or disabled safety features of the grinder, including a mechanism that shut off the machine's power when it was disassembled. While Sinley was working on the machine, a supervisor

allegedly pushed the reset button, restarting the machine and causing serious injuries to Sinley.

{¶ 33} At the time of his injury, Sinley was subject to a collective-bargaining agreement between Superior Dairy and Sinley's union, the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 92. That agreement contains a grievance procedure for "any employment-related controversy or dispute arising between the parties to [the] Agreement, or between an employee and the parties to [the] Agreement as to the interpretation or application of the terms and provisions of [the] Agreement, or as to the violation of any employment-related laws or statutes (except workers' compensation matters)." The agreement requires binding arbitration of any dispute that remains unsettled after the grievance procedure has been exhausted. It also provides that the grievance and arbitration procedures

> shall apply equally to any alleged violation of laws or statutes by the Union or the Company, as alleged by an employee, including without limitation: Title VII of the 1964 Civil Rights Act; the federal Age Discrimination in Employment Act; the Consolidated Omnibus Budget Reconciliation Act; the Employee Retirement Income Security Act; the Equal Pay Act; the Fair Labor Standards Act; the Family and Medical Leave Act; the Americans with Disabilities Act Amendments Act; the Immigration Act of 1990; the Fair Credit Reporting Act; the Labor-Management Relations Act; the Lilly Ledbetter Fair Pay Act; the Occupational Safety and Health Act (but only as to the anti-relations aspects of OSHA); alleged breaches of a Union's duty to fairly represent its employees; alleged breaches of Ohio public policy; Ohio Revised Code Chapter 4112; Ohio Revised Code Section 4112.90 (workers' compensation retaliation); Ohio

Revised Code Section 4101.17; Ohio Revised Code Section 4113.52; Ohio's overtime and/or minimum wage statute; and the Genetic Information Non-Discrimination Act of 2008.

**{¶ 34}** Sinley sued Superior Dairy, alleging an employer intentional tort under R.C. 2745.01. Superior Dairy moved to stay the action and compel arbitration. The trial court denied the motion. The Eighth District Court of Appeals affirmed, explaining that "the [collective-bargaining agreement] does not expressly cover employer intentional tort claims under R.C. 2745.01," 2020-Ohio-4068, ¶ 24, "Sinley did not clearly and unmistakably waive his right to a judicial forum for his claim," *id*., and "he was not required to utilize the arbitration procedure to pursue his claim," *id.*

### Law and Analysis

**{¶ 35}** The Federal Arbitration Act makes a written agreement to arbitrate in "a contract evidencing a transaction involving commerce * * * valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has explained that the Act's "purpose was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). From the federal policy favoring arbitration, the Supreme Court has discerned a presumption of arbitrability, which applies "only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand." *Granite Rock Co. v. Internatl. Bhd. Of Teamsters*, 561 U.S. 287, 301, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010). These same principles generally apply in labor cases involving collective-bargaining agreements. *See id.* at 298, fn. 6.

16

{¶ 36} Nonetheless, " '[a]rbitration is strictly a matter of consent.' " (Brackets added in *Lamps Plus*.) *Lamps Plus, Inc. v. Varela*, ___ U.S. ___, ___, 139 S.Ct. 1407, 1415, 203 L.Ed.2d 636 (2019), quoting *Granite Rock* at 299. The Supreme Court has explained that when a union waives the rights of represented employees to a judicial forum for statutory claims, the waiver must be "clear and unmistakable." *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 80, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998). Put another way, the Supreme Court has required the agreement to arbitrate statutory claims to "be 'explicitly stated' in the collective-bargaining agreement." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 258, 129 S.Ct. 1456, 173 L.Ed.2d 398 (2009). Ordinary textual analysis of a collective-bargaining agreement may show that "matters which go beyond the interpretation and application of contract terms are subject to arbitration; but they will not be *presumed* to be so." (Emphasis sic.) *Wright* at 79.

{¶ 37} In *Wright*, the grievance and arbitration procedure extended to "[m]atters under dispute." *Id.* at 80. That language was ambiguous; it could require arbitration of all disputes arising between the employer and the employee, including the employee's cause of action for age discrimination, or it could be limited only to contractual disputes arising under the collective-bargaining agreement itself. *See id.* Because of this ambiguity in the scope of the arbitration requirement, the Supreme Court in *Wright* concluded that waiver of a judicial forum for the employee's age-discrimination claim was not clear and unmistakable. *Id.* at 80-81.

{¶ 38} Therefore, as the Fourth Circuit Court of Appeals has explained, "[g]eneral arbitration clauses, such as those referring to 'all disputes' or 'all disputes concerning the interpretation of the agreement,' taken alone do not meet the clear and unmistakable requirement of [*Wright*]." *Carson v. Giant Food, Inc.*, 175 F.3d 325, 332 (4th Cir.1999). Something more is required to make the arbitration requirement explicit, such as "a clear and unmistakable provision under

which the employees agree to submit to arbitration all federal causes of action arising out of their employment." *Id*. at 331.

{¶ 39} The question in this case, then, is a straightforward one: Does the collective-bargaining agreement clearly and unmistakably require the arbitration of Sinley's employer-intentional-tort claim? It does.

{¶ 40} The collective-bargaining agreement explicitly states that the grievance and arbitration procedure applies to "*any* employment-related controversy or dispute arising * * * between an employee and the parties to [the] Agreement * * * as to the violation of *any* employment-related laws or statutes (except workers' compensation matters)." (Emphasis added.) " ' "Any" means "one or some indiscriminately of whatever kind." ' " *Weiss v. Pub. Util. Comm.*, 90 Ohio St.3d 15, 17, 734 N.E.2d 775 (2000), quoting *State ex rel. Purdy v. Clermont Cty. Bd. of Elections*, 77 Ohio St.3d 338, 340, 673 N.E.2d 1351 (1997), quoting *Webster's Third New International Dictionary* 97 (1971). "[T]he term 'any' in a phrase envelops 'every' example of the subject described." *Thomasson v. Thomasson*, 153 Ohio St.3d 398, 2018-Ohio-2417, 106 N.E.3d 1239, ¶ 54 (Kennedy, J., concurring in judgment only).

{¶ 41} Sinley's employer-intentional-tort claim is an "employment-related controversy or dispute" with his employer, Superior Dairy, and it involves an alleged violation of an "employment-related law[ ] or statute[ ]." He asserts a cause of action under R.C. 2745.01, which codifies and modifies the common-law employer intentional tort to require proof of the employer's "specific intent to cause an injury," *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, ¶ 56. The statute expressly recognizes that the employer intentional tort is one that is "committed by the employer *during the course of employment*." (Emphasis added.) R.C. 2745.01(A). Because Sinley's employer-intentional-tort claim is an "employment-related controversy or dispute" involving an alleged violation of an "employment-related law[ ] or statute[ ,]" the collective-

bargaining agreement required him to submit it to the grievance and arbitration process.

{¶ 42} The majority states that "for a waiver to be clear and unmistakable, it must identify the claim either by statute or cause of action." Majority opinion, ¶ 28. That is, for the majority, nothing short of including the magic words "employer intentional tort" or a citation to R.C. 2745.01 will do. However, as the Third Circuit Court of Appeals has recently explained, "[t]he standard enunciated in *Wright*[, 525 U.S. 70, 80, 119 S.Ct. 391, 142 L.Ed.2d 361,] does not require magic words or prescribe any bright-line approach requiring enumeration of statutes." *Darrington v. Milton Hershey School*, 958 F.3d 188, 194-195 (3d Cir.2020). Rather, "*Wright* requires nothing more than it says. The clear-and-unmistakable-waiver standard is satisfied if a collective bargaining agreement, interpreted according to applicable contract-interpretation principles, clearly and unmistakably waives a judicial forum for statutory claims." *Darrington* at 194.

{¶ 43} And contrary to what the majority claims, the Sixth Circuit Court of Appeals' most recent decision on this issue has rejected the argument that "citation to specific statutes in the [collective-bargaining agreement] is necessary for the arbitration provision to cover claims brought under those statutes," *Nealy v. Shelly & Sands, Inc.*, 852 Fed.Appx. 879, 882 (6th Cir.2021). In that case, the court concluded that the arbitration provision encompassed racial discrimination claims by referring broadly to " 'claims regarding equal employment opportunity * * * under any federal, state or local fair employment practices.' " (Ellipsis sic.) *Id.* at 883.

{¶ 44} The majority's approach runs counter to the Supreme Court's directions to determine whether the parties to the collective-bargaining agreement in fact clearly and unmistakably agreed to arbitrate Sinley's employer-intentional-tort claim. It also blatantly disregards the intent of the parties as expressed in the plain and unambiguous language they used in the collective-bargaining agreement.

Here, the parties to the collective-bargaining agreement used broad language, but the agreement's meaning is nonetheless "clear and unmistakable." It requires arbitration of "any employment-related controversy or dispute" involving the violation of "any employment-related laws or statutes" that is not resolved by the grievance procedure. There is no reasonable reading of this language that excludes an employer intentional tort.

**{¶ 45}** The agreement also restates the arbitration requirement another way to ensure that it is "explicitly stated" as required by *Wright*. It provides that the grievance and arbitration procedures "shall apply equally to any alleged violation of laws or statutes by the Union or the Company, as alleged by an employee, including without limitation" a list of state and federal laws and causes of action. The word " '[i]ncluding' is a word of expansion." *In re Hartman*, 2 Ohio St.3d 154, 156, 443 N.E.2d 516 (1983). Similarly, we have explained that the phrase " 'including, but not limited to' means that the examples expressly given are 'a *nonexhaustive* list of examples.' " (Emphasis added in *Muncie*.) *State v. Anderson*, 138 Ohio St.3d 264, 2014-Ohio-542, 6 N.E.3d 23, ¶ 45, quoting *State v. Muncie*, 91 Ohio St.3d 440, 448, 746 N.E.2d 1092 (2001). So, looking to the plain language of the collective-bargaining agreement, the arbitration requirement on its face encompasses more causes of action than those it specifically identifies by name or statutory citation. That proves that the majority is incorrect when it says that causes of action must be specifically named or cited before the collective-bargaining agreement can require them to be arbitrated.

**{¶ 46}** The Federal Arbitration Act was enacted to reject the judicial hostility to arbitration exhibited in the majority opinion. Therefore, "when deciding motions to compel arbitration, the proper focus is whether the parties actually agreed to arbitrate the issue," *Taylor v. Ernst & Young, L.L.P.*, 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203, ¶ 20, and "the courts must not 'override the clear intent of the parties, or reach a result inconsistent with the plain text of the

contract,' " *id.*, quoting *Equal Emp. Opportunity Comm. v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002).

{¶ 47} The parties to the collective-bargaining agreement bargained for a dispute-resolution process in which they elected to submit to arbitration all employment-related causes of action, whether arising in tort law or statute. In reviewing the denial of Superior Dairy's motion to compel arbitration, our task is simple: we decide only whether the collective-bargaining agreement clearly and unmistakably requires arbitration of Sinley's employer-intentional-tort claim. Because it is clear and unmistakable that Sinley's employer-intentional-tort claim is subject to arbitration, I would reverse the judgment of the court of appeals and remand this matter to the trial court to grant the motion to compel arbitration. Because the majority does not, I dissent.

FISCHER and DEWINE, JJ., concur in the foregoing opinion.

_____

Scanlon & Elliott, Michael J. Elliott, and Lawrence J. Scanlon, for appellee.

Haneline Pryatel Law and Keith L. Pryatel, for appellant.

Giorgianni Law, L.L.C., and Paul Giorgianni, urging affirmance for amicus curiae Ohio Association for Justice.

Elfvin, Klingshirn, Royer & Torch, L.L.C., and Neil Klingshirn, urging affirmance for amicus curiae Ohio Employment Lawyers Association.

Kevin D. Shimp, urging reversal for amicus curiae Ohio Chamber of Commerce.

Mayer Brown, L.L.P., Carmine R. Zarlenga, Archis A Parasharami, and Daniel E. Jones, urging reversal for amicus curiae Chamber of Commerce of the United States of America.

_____